All right, so Mr. Verrilli, you've got 16 minutes and three minutes for rebuttal. So the floor is yours. You've got 13 minutes out of the gate. Thank you, good morning, and may it please the court, Don Verrilli for defendants. I recognize that there is a certain logic to starting with the arguments made by the amicus about Kelly, but with the court's permission, I'd like to start with the Section 371 Council Conviction. That's where we have a genuine dispute with the government and the resolution of that issue matters a great deal to the defendants. I do understand the importance of addressing the Kelly issues as well and will do so. While the government hasn't confessed error on the Section 371 Council, it has acknowledged error in the instructions because one charged object of the Section 371 conspiracy was conversion and there can't be conversion here on these facts. The government tries to salvage the convictions by arguing harmless error based on client conspiracy object that was also charged to the jury. These convictions can't be salvaged. Now we've argued in our briefs that Section 371 can't apply on these facts as a matter of law, but even assuming that it can, and in the Supreme Court's approach to harmless error in McDonald and in this court's harmless error precedence, it's clear that this error isn't harmless. Supreme Court in McDonald said that an instructional error is not harmless if it is possible that the jury relied on the erroneous instructions when convicted. Asking that question here, the answer is that it's more than possible, it was likely. Government's whole theory of the case was that this was a case about stolen property. Indeed, I think it's instructive to look at what's essentially the very last thing that the government said to the jury in closing about their theory of the case, and this can be found at page 1033 of the appendix. Crimes here were simple at their core. Can't steal government information, you can't pass it on to other people who know it is stolen and trade on it. That was their whole theory of the case. And with respect to the section 371 conspiracy count in particular, here's what the prosecution told the jury to do, and this is at page 1032. Take the jury form and mark guilty on count one because that is a conspiracy to steal government information not a word about client conspiracy. Conspiracy to obstruct the lawful functioning of the government through deceitful means. So, and the jury of course convicted on the underlying conversion charge and therefore it stands to reason that they convicted on 371 based on what the government told them to do and I don't think the government can come in at this juncture and say, well, yeah, we tried this case under a theory to steal government property, but there was this other thing tucked away and we really didn't focus on it at all. You can find harmless error based on that. We don't think the court needs to go any further on harmless error than that, but if the court does and applying the standard in this court's precedence that there has to be such overwhelming evidence of proof of the elements of the correctly charged elements of the offense that no rational jury can do anything other than convict. The government can't come close here either with respect to showing specific intent to obstruct or disrupt the function of the government or with respect to deceit. Now with respect to specific intent that to disrupt government functions, that issue was hotly disputed at trial. There was of course evidence that the defendants introduced that CMS did not keep great information strictly confidential, that not just Mr. Blazak, but many consultants routinely consulted with and discussed with and met with CMS officials and employees and routinely make predictions on that basis. With respect to the actual effects of the disclosure, CMS officials testified that while theoretically it might increase lobbying before the notice of proposed rulemaking announces the proposed rule and it might cause government employees to clam up, but of course there was no evidence that that actually happened in this case, more frankly than any other case. And so based on that, we don't think it's come close to saying as a factual matter that the evidence was so one-sided and overwhelming that the only conclusion that jury could reach was a conclusion of specific intent to disrupt government functions. And I think even more fundamentally, that would be illogical. The scheme that the defendants were charged with here was a scheme to short stocks and then trade on this information about the rates in advance of it becoming public so that their short sales would be profitable. Well, if they were to disrupt the CMS's rate-setting function, that would disrupt the scheme. Their scheme depended on the rate-setting function going along as it was intended to. And I think it's telling that it's not just the defendants that describe it this way, that the amicus agrees with this. And I point actually to page 10 of the letter brief of the amicus, and I'm just gonna quote from it because I think it's quite significant. The Blazac defendants did not scheme to affect CMS's right to control decisions about what rates to set and when to disclose them. On the contrary, the government property that issues confidential pre-decisional information that the government developed to inform the ultimate regulatory decision. In order for the scheme to be profitable, CMS needed to issue reimbursement rate changes that were consistent with the misappropriated pre-decisional information. So I think we've got a validation from the amicus that there wasn't disruption with CMS's rate-setting function. Certainly there wasn't such overwhelming evidence that the court would conclude no harmless error. And then similarly with respect to the deceit element, we think that there's no way to conclude that there was such overwhelming evidence here that the court would have no choice but to find deceit. There were no false statements, there were no bribes, there weren't the kind of indicia of deceitful conduct that has always been found necessary in prior cases in front of this court and others. So with respect to harmless error, I just think that there just isn't a basis here from close to concluding that the error was harmless. I'm ready to turn to the discussion of Kelly and Gerard and the amicus issues, but I'll pause and make sure that, ask whether the court has any questions on the harmless error. No, obviously if we agreed with Ms. Goldstein, we wouldn't get to really to this other point, right? That's correct. That's why I said I thought there was a certain logic to starting with Kelly, but as a matter of what's actually a dispute, I wanted to start with harmless error and I appreciate the court giving me the opportunity to do so. Moving to the Kelly issues, I think the place to start is with the majority opinion of the panel previously. As we read that opinion, the conclusion of the panel that the government information at issue in this case could be deemed to be property rested on two points. The first one was that because the information was confidential, that meant that the government had the right to exclude others from using and possessing that information and the right to exclude by itself was a sufficiently strong indication that something was property, that there was no need as a matter of law to show that whatever it was that was protected, in this case, information by the confidentiality at any economic value in the hands of the government. Right, since I wrote it, I mean, that language is basically from Carpenter, right? Well, the difference, Your Honor, is that in Carpenter, well, as we read what the Supreme Court said, what the court said was the confidential business information is property in the hands of the business owner because in that situation, the confidentiality preserves the economic value of the information. And that's the key difference between- So your view is that the government, because it's government, can never have a confidential interest in information? It can always have a confidential interest- For purposes of the mail and wire front statute. No, our position is not that, Your Honor, there are some circumstances in which we can envision the government having a proprietary interest in confidential information. If the government is acting in a commercial matter, commercial way, then you would agree that the property fraud counts could apply. Yes, Judge Walker, and I can give you an example. For example, the government can apply for patents. Patents have economic value. And so if there were someone in NIH that would come up with a great invention and the government was intending to patent it, and somebody took that confidential information from the government and ran and got a patent first, I think that would be property for the mail and wire fraud statute. But that really is a vast difference from where we are in this case. Because in this case, the information has no economic value in any sense to anyone in the government. Its sole value is its regulatory value. Let me ask you about Girard, because Girard figured in the first opinion and its Second Circuit law. So in Girard, we said that the government has a property interest in certain of its private records. So is your position that Girard is no longer good law? That is our position, Your Honor. I think the key language in Girard, and if you'll just bear with me for one second, I'd like to focus on, the key language in Girard is page 71 of the opinion. And the sentence that I think Your Honor is referring to is although we are not concerned here with the loss of copyright, we are satisfied nonetheless that the government has a property interest in certain of its private records, which it may protect by statute as a thing of value. The predicate for concluding that the information at issue in Girard fit within the statutory terms of section 641 was the conclusion that it was property. And I don't think that conclusion can be sustained after Kelly, because what Kelly makes clear is that property has to be something that has economic value to the government. And therefore, I think- You stressed economic value as being the kind of turning point, the pivotal question in deciding this. And I'm wondering if that's the case, because if you have a, it seems to me that Kelly turned on turned on Cleveland, which dealt with a regulatory question. And if the government is acting as a regulator or is acting as a sovereign, isn't the argument being made that therefore there is no property interest, that merely excluding others from access to that property doesn't make it property if the government is acting in a regulatory capacity. That seems like a different point than the one you're making. I think it is different, but I think they're complimentary. And I think Your Honor is correct. What this gets at ultimately, and I think Your Honor phrased it correctly earlier, is that the question in any case like this one or Kelly or Cleveland is whether the government acting in a sovereign capacity when it exercises the language in Kelly and Cleveland of its rights of exclusion, allocation and control, or whether it's acting in its capacity as a property owner. And I'd say, and I think the United States agrees with us about this, that it follows a fortiori from Kelly, because Kelly, after all, there was a road. It was real estate, physical property, but the government was acting, was exercising its right to exclusive control over that physical property in a regulatory capacity. Here, there's no physical property. There's nothing underlying a value here. It's just information. The only value to the government of this information is regulatory information. In fact, the information is the regulation. It's the rate that they're gonna promulgate. And so in that situation, I think Kelly gives us a quite clear instruction that when the government's acting in a sovereign capacity, that the information isn't property, the government isn't acting as a property owner, as distinct from, say, the patent situation. And if I could, just going back to 641 and Girard for a moment, I do think, in addition to our view that Girard is not good law, I do think there's some important textual indications in section 641 that you have to conclude that the thing of value is property for it to be within 641. And there are two in particular. In setting forth what the criminal consequences would be for improper conversion of a thing of value, statute says you have to determine if the value of such property in the aggregate exceeds a certain amount. The statute itself refers to the thing of value as property. And then the last sentence of section 641 defines the word value for purpose of the statute and says the word value means face, part, or market value, or cost, price, either wholesale or retail, whichever is greater. It's talking about property. And I just think that that's clear. I think that's why the court in Girard felt it needed to say that the records qualified as a species of property in order to bring them within the terms of section 641. But I think after Kelly, we thought after Cleveland, but certainly after Kelly, that proposition isn't sustainable. And we have cited authority to this court that the court does have the power to revisit a prior opinion of the court and depart from it if intervening Supreme Court authority has called it into doubt even subtly. That's the Dorsher case, which we have recited in our letter brief. All right, but so even Judge Kearse's dissent acknowledged that Girard was still good law. You're suggesting that after Kelly, that's no longer the case. We are, yes. We do think it's distinguishable for the reasons that Judge Kearse identified, but we also think that it's not good law for the reason I just gave, that it's not property. And of course, the United States has come to the same conclusion, and they- No, no, I know that. We'll get to that in a minute. But let me ask you a different question. It seems to me Kelly and Cleveland involved, as Justice Kagan described it, schemes to alter a regulatory choice. In one case, access to a bridge. In another case, the issuance of gambling licenses. But here, the goal was not to alter the rates that were gonna be charged for a hit replacement. Here, the goal was just to get access to the information before it was publicly disclosed, so it could be traded on, right? That's true, but it doesn't bear on the question of whether the information qualifies as property, because what Justice Kagan was saying, as I read the court's opinion, was that the interest there was regulatory, that they were altering the regulatory choice. The interest here is equally regulatory. There wasn't any alteration of the regulatory choice, but it was still a regulatory choice. It was a government acting as sovereign in Kelly, government acting as sovereign here, not as property owner. Now, that's the key difference. But- In what way was the government acting in a regulatory capacity when it decided what information was going to be confidential and what wasn't gonna be confidential? I think that that's a quintessential exercise of government's regulatory authority, and I think the testimony in trial established that, Judge Walker, when the government's own witnesses came in and explained what the problem was with premature disclosure, they said, well, there are two problems. If the, and of course, just to digress for one second, if I may, remember, what we're talking about is information that is going to be released in a notice of proposed rulemaking as a proposal, as a final rate proposal. And then the argument is, well, if that rate information gets out before the notice of proposed rulemaking, it can have two adverse effects. One adverse effect is it can cause employees within CMS to be more reluctant to share information with each other because of fear of leaks. And second, it's the second risk is that it will trigger premature lobbying before the notice of proposed rulemaking comes out. Those are classic pure regulatory interests. Those are not interests of the government as property owner. Those are pure regulatory interests. And I think that really gets at the heart of the problem. And I do think, in terms of- Your point is that you can't disassociate the keeping of the confidential information here from the actual regulatory function of regulating the rates. Part and parcel of the regulation. I think that's exactly right. And then I do think that the other points that are significant here, that adoption of the view that the amicus urges about the scope of the meeting property doesn't just transgress, we think, the specific reasoning and ruling of Kelly, but all of the significant policy concerns that Kelly identified in Cleveland and McNally before it identified. It creates precisely the federalism problem that the court was trying to avoid of the federal government policing good governance of states and localities. The amicus says, well, this is a case about federal employees. True enough. But the law, if the court were to adopt the meeting of property that the amicus urges, then that's going to apply equally to state and local employees. And therefore you've got exactly the federalism problem. Second, you've got the problem, I think, of reinvigorating the very broad form of honest services that existed before McNally and that the Supreme Court in skilling said had to be aired back to its traditional core of bribery or extortion. Because after what they really are saying about one of the defense, Mr. Laurel, was that the government was deprived of his honest services when he leaked information. So you've got that problem. And then I think you've got the additional problem that we've tried to identify that we really think is a serious problem here. But there's a lot of confidential information held by the federal government, a lot. And the theory here is that any unauthorized disclosure of that confidential information is a crime. It's a theft of the government's property through a wire fraud or mail fraud, so long as the wires are the mail to use. And it's a conversion of government property under 641, even without the use of the wire. Well, you know, that happens all the time. Whistleblowers disclose confidential information to journalists because they believe it's in the public interest and their duty of loyalty to the government actually demands them to do so and journalists publish it. Well, under the anarchist's reading of the breadth of property and thing of value, every one of those disclosures becomes a crime. And I think that raises such significant issues of First Amendment problems that it really ought to bear directly on the question of whether and how broadly one reads the term property. And of course, as the Supreme Court said in Cleveland and McNally, the rule of lenity has got to bear on the decision about how broadly one reads term like property. But nobody's saying there's no First Amendment issues here, right? And then there's no whistleblowers in this case. That's true. That's true, Your Honor, of course. That's true. That doesn't apply here. But again, as with the federalism problem, if the court adopts this as a definitive construction of the statute, then it will necessarily apply in that situation as well. There isn't a place to distinguish that situation. And the anarchist doesn't offer one. If the conversion count, I think it's particularly salient in this regard, but really Section 1343 is the same, that if the information is disclosed, the crime is complete at the minute of disclosure. And Your Honor may recall that the United States made that representation at the lectern in the first argument in this case. Yes, the crime of conversion is complete when the information is disclosed. It doesn't matter to whom it's disclosed or for what purpose.  And therefore, if it's disclosed to a journalist, the journalist publishes it. Or even if the journalist doesn't publish it, it's a crime. And so I do think that the problem, even though there is no First Amendment issue here, it's not the First Amendment overhang. It's not one that can be taken out of the equation in thinking about what the proper definition of property and thing of value is because adopting that broad definition invariably makes those things a crime. And that just can't be right. Can't be right. Yes, Averill, you've got three minutes of rebuttal. We've gone way over, but, you know. Thank you, Your Honor. I appreciate it. We'll hear from you again. We'll now hear from Mr. Fagan. Thank you, Your Honor. May it please the court. I understand the court wants to hear from us on the Kelly issue, but if I could please just spend a couple of minutes on the conspiracy issue, because it's very important to us to establish the defendants here did in fact commit a crime and that Blazak, Huber, and Ulan were all validly convicted of conspiring to defraud the United States. I think it's a very, very simple why. You could take as a given, obviously we disagree with it for reasons we've laid out in our brief, but you could take as a given Mr. Verley's discussion of the state of the evidence in this case. But we think that a jury that convicted on conversion under the instructions, as they appear at pages 1079 to 1081 of the appendix, could not possibly have not also concluded that these defendants defrauded the United States. As Mr. Verley said, the issue here was whether the defendants unlawfully disclosed confidential information and the evidence clearly shows that they did. And in order to find the conversion counts, the jury had to find, this is on page 1079 of the instructions, to convert property knowingly means to use the property in an unauthorized manner in a way that seriously interfered with the government's right to use and control the property, knowing that the property belonged to the government and knowing that the government did not authorize such a use. There is simply no way the jury found conversion and did not find an unlawful disclosure of information. And under this court's decision in Peltz, the very making of a plan whereby a government employee will divulge material information, which he knows he should not, is dishonest within Chief Justice Tapp's language in Hammerschmidt, regardless of whether such plan is secured by consideration. One of the points Mr. Varelli makes is that if you didn't, well, you didn't argue this case at all, this is your, you're the Solicitor General, but that the government didn't argue this during summation. Is that accurate? Well, the way the, as Mr. Varelli noted at the end during the course of his argument, we clearly and consistently argued that this case was about the disclosure of confidential information. And I think it's therefore essentially on all fours with the Supreme Court's decision in Haas against Henkel and this court's decision in Peltz, both of which involved the disclosure of government information that was used for trading purposes. In Haas, it was a crop report. In Peltz, it was information about a lawsuit the government was going to bring. But I think both cases are quite clear that nothing further is necessary, no bribery, no lie further is necessary to establish deceit beyond the fact that an employee is breaching his, or someone else is breaching known duty of, I'm sorry, Your Honor. No, it's tricky with Zoom because in real life you can pick up on nonverbal cues and interrupt a little more easily without appearing rude. So that's on me, sorry. I was going to ask if you would just focus on the interference part. I mean, that's where Mr. Verrilli led. He also went to deceit, but what is the evidence of the interference here? Well, Your Honor, the non-disclosure, the disclosure of information the government is trying to keep confidential is itself interference with government operations. I mean, Mr. Verrilli himself said during the course of his argument that keeping information confidential, these are his words, is a quintessential exercise of regulatory authority. So that is a government operation. And there's testimony in the record if you want to look, for example, pages 840 and 846 of the record, which is Hart Scheme's testimony, or page 683, which is the cross-examination of Fogel that shows the government disclosed this information at exact times through the federal register or on CMS's website, precisely because the government has an overarching role as a market regulator, and the government did not want to give one party an advantage over others. And that necessarily was something the jury found that the defendants here interfered with, and except for Worrell, it found that there was a conspiracy. And I really think if you just put the instructions right next to one another, there's really, and then have the overlay of paws and pelts that I think are on all fours, and that I really don't think they have any response to, there is no question that a jury would have found even just the defraud problem. And that's the only question here. This was definitely a conspiracy to defraud the United States. We've regretfully concluded, however, Your Honor, that this was not a property crime, and so in light of the legal landscape after Kelly. Well, Kelly doesn't say a word about, but Kelly doesn't say a word at all about Carpenter, and it doesn't say a word at all about confidential information being property. So why do you draw such a broad conclusion from Kelly? Well, let me say a couple of things about that, Your Honor. The first sort of overarching thing is, I think under this court's precedence, and we think this is the right approach as a general matter, we need to look at just the entire legal landscape of which Kelly is a part, and kind of assess it afresh after the Supreme Court's GVR order, rather than just focus super narrowly on Kelly. No, I mean, we've got Kelly. We take it seriously. We took Cleveland seriously, but it's not clear to me what, I mean, Kelly is the intervening event since the first panel decision. So what is it about Kelly that makes this now, what about Kelly is a game changer? And Your Honor, I'd also like a chance to address our view of this is much, much narrower than the defendants, but what Kelly really does change here, I think the critical discussion is at page 1573 of Kelly. The government, one of the arguments that the government advanced in Kelly to which the Supreme Court responded was that the government's use of the bridge was essentially analogous to a private party's use of the bridge. I don't think there's any question that if someone were to alter a private party's decision about access to private land or private bridge and we have private toll workers, that that would clearly be a property interest going back to the days of Blackstone and probably even further back from that. But what Kelly says is when the government's doing it here on the George Washington Bridge, it's a regulatory interest. Well, it's a regulatory choice because it has to do with how lanes to a bridge are gonna be allocated. That makes perfect sense to me. It's just not clear to me why we think that the confidential information at issue in this case is analogous to lanes to a bridge or to a gambling license. Well, a few things, Your Honor. First of all, as we would with a decision from this court, we think it's important that we read the proper implications of the decision as opposed to just its facts. And we're not saying this case is precisely on all fours with Kelly. But what Kelly, we think, teaches us is that you can't just look at the narrow context and say that the government was there or the port authority there was regulating, was controlling the use of property that belonged to the port authority. I agree. I agree with Kelly. The unanimous decision of the court, whether I agree or not, is irrelevant, but it makes sense. It's just not clear to me why the property at issue here is a scheme to alter a regulatory choice. And I'm not sure you can have it both ways on 641 and or 371 and this. I don't think it's, I'm sorry, Your Honor, I did not interrupt. I don't think Kelly is limited to the idea that it has to be a scheme to alter a regulatory choice. I think Kelly stands for a slightly broader proposition that you need to look at the overall context of what the government's doing, even if in other contexts, it might be considered private property. So on page 25 of Carpenter, the court says that there's a property interest in confidential business information, and it refers to the information at issue as the stock and trade of the Wall Street Journal. Now, here we have the teaching, I think, from Kelly is that when the government's doing something regulatory, that may be the business of government, but that doesn't make it analogous to a property interest that a private party would have. And therefore, we think at least on the narrow facts of this case, and we're not conceding anything broader than that here, the narrow facts of this case, you have kind of a perfect storm because as Mr. Verley said, what we have here is that the very object of the scheme is the content of a regulation. That's it, that's what they're going after, the rate that the government was going to set. And on those very narrow facts, which we think are like the tip of the spear, the apotheosis, whatever you wanna call it, of kind of the worst possible scenario for a property crime prosecution after Kelly, that's what we think that we have here. Okay, go ahead. Oh, I'm sorry, Judge Walker, go ahead. I apologize. I just wanna clarify something. I understand that Kelly did not mention Carpenter and didn't deal with Carpenter, but you make the argument, the government makes the argument, I think, in response to the amicus here, that the argument that, the position that the panel took in our case was that the right to exclude others from the information is what makes it property. And I think that if I'm not correct, that argument was made in Kelly by the government. Is that correct? We did rely on the right to exclude. We didn't, I mean, I don't think we made a piece. Right, you didn't make that argument and Kelly rejected that. And Kelly is quite clear on page 1573 that the government wasn't validly exercising the port authority in that case. Again, it wasn't. Right, but I'm talking about just the concept of the right to exclude somehow being equated to it being property. And I think that Kelly said, no, you have to look further. To determine whether it's property. Yeah, I think- They looked further and they found it to be regulatory. Is that accurate? I'm sorry, your honor. I think that's basically right. Although we read the further looking that one needs to do quite narrowly. I think what the court was saying there is, maybe the government is exercising some right to exclude, but we need, as I was trying to say during my colloquy with Judge Sullivan, that you need to look a little bit further than that and figure out why the government do, in what context is the government doing this? And there the port authority was exercising what I think in the private context would just be considered a right to exclude or control access to property. But in the context of running a public toll bridge was more properly considered a regulatory function. Well that- And so- I'm sorry. Go ahead, I'm sorry. And so while there may be private analogs like in Carpenter itself, where there is confidential business information, I do think Kelly and the point your honor, Judge Walker has made, mean precisely that what we need to do is look a little bit further at whether the business that is at issue in the confidential business information is regulatory business or something else. Well, we do think that is quite narrow and that there are many other circumstances. For example, the commercial circumstance that Judge Walker brought up earlier or government contract bids, or even Gerard, where the disclosure of information would indeed be a property crime. We just think that in this particular case where the information is literally the content of a regulation that CMS is required to issue through Notice and Comment Administrative Procedure Act rulemaking is about as governmental as it could possibly get. And what could be, I'm sorry. No, I'm sorry. I was gonna ask you to go back to Kelly and Cleveland because they again talk about schemes to alter a regulatory choice. And this scheme here doesn't seem to have been interested in the regulatory choice at all. The choice to lower or raise reimbursement for certain operations under Medicare was utterly irrelevant to this scheme, right? Well, it wasn't irrelevant in the sense that that's the information that they were trying to get. They weren't trying to alter it. They weren't trying to alter that, right? They were not trying to alter it. Your Honor, we don't read the decisions to, again, just narrowly bear on the issue of a government, altering a governmental regulatory choice. We think they more, a little bit more broadly speak to, in Cleveland, we didn't understand this earlier, but in light of Kelly, we now understand Cleveland to be saying this between the two. So you think Girard is still good law? Yes, Your Honor, for among other reasons, the reason Judge Kirst noted in her dissent from the original panel. Okay, but let me give you a different hypothetical. So if the DEA was prepared to bring charges with the U.S. Attorney's Office against a couple of pharmaceutical companies, and they were planning to do that on Monday, and somebody from the DEA, a lawyer from the DEA decided to disclose that to hedge fund friends, your view is that that would be not covered under the property fraud statutes and 641? Well, I think I need to know a little bit more about the circumstances. Circumstances are, hedge fund friend, there's gonna be an announcement of charges against pharmaceutical companies on Monday, short the stock before 10, because that's when the press conference is gonna be. Well, Your Honor, in particular circumstances, the government might well have a direct financial interest in that. For example, if we're seeking fines or forfeiture of property from the- So why would the early disclosure of that fact affect the government's ability to collect fines? Well, Your Honor, to the extent it's going to wind up affecting the markets and the prices of the pharmaceutical company. And Your Honor, I think, but I guess my basic point today is we need to look at the facts and circumstances of each particular case and try to assess whether the government had either an economic or some other non purely regulatory interest in the actions it was taking. And I don't know whether in that circumstance it might have had some value to the government that it was unknown to the pharmaceutical company this would be coming out on Monday, whether the government had some interest in maintaining the confidentiality of that information beyond a pure regulatory interest. But in this particular case, there is no interest beyond the regulatory one because the object of the scheme was simply the content of the information in an upcoming regulation. And after Kelly is shed more light on Cleveland and the kind of contextual look that we now feel constrained to take, we don't think that that is properly characterized as a property crime. We urge the court to be quite narrow about that because as I've just said, I don't think the court needs to get into any of these other hypotheticals because we can kind of take them as they come and the government is reassessing the kinds of charges it'll bring and there are various alternative statutes it can use in certain circumstances, including in your honor's hypothetical section 371, which is what we think is the valid conviction in this case. All right, I better in the interest of efficiency, you're over 11 minutes at this point largely. I appreciate it. Thank you, your honor. All right, thank you very much. We'll now hear from Ms. Goldstein for eight minutes or more, we'll see. Good morning and may it please the court. Kelly does not materially alter the legal landscape this panel already analyzed in concluding that the property fraud convictions in this case should be affirmed. Following Kelly, the question is whether Kelly expands Cleveland so as to foreclose the reasoning in Carpenter when the government is the proprietor of the information in question. Or put another way, does Kelly require this court to hold that the Carpenter analysis is so limited that it can't be applied to government information as well as confidential business information? Kelly does not work this sea change in the law.  the Supreme Court would have at least mentioned Carpenter in its opinion or discuss the applicable analysis, the right to exclude, which was the cornerstone of Carpenter's property fraud analysis. Kelly just does not suggest that the Supreme Court restricted Carpenter in this way. And this court really need not go that far. The better reading of Kelly is that the court was applying Cleveland rather than expanding Cleveland and therefore limiting Carpenter by implication. So as we set forth in our papers, our view is even after Kelly, the property fraud convictions in this case should be affirmed. And I think I'd like to turn to- Before you do that, can I just ask a question, Judge Walker? The government made the argument in Kelly that the original panel in Blasek bottomed its decision on, which is that it's property because the government has a right to exclude others from that property, from that information. Am I correct on that? Well, I think Mr. Finnegan said that was a piece of their argument. A piece of their argument. But Kelly rejected that piece of the argument by the government in that case, I believe, and said that the government, if the government controls information furtherance of its regulatory function, it's not property even though it has the right to exclude others from access to that property. Your Honor, I don't read Kelly as implicating the right to exclude concept of property rights. The way that I understand Kelly is not, and this is actually in sharp contrast to the way that the government portrays Kelly. I don't believe that the Supreme Court held that the Port Authority was deprived of its exclusive control of the lanes on the bridge. That actually doesn't make much sense because the whole point of the decision was that the defendants in the Kelly case essentially were the Port Authority and they had the power to cause the Port Authority to exercise its regulatory authority to reallocate traffic lane. So I don't read the Kelly decision as stepping on the toes of, or narrowing in any respect, the carpenter analysis of right to exclude. And I think one way to sort of think about how all these cases fit together is to think about this case involving misappropriation. And I think when we think about misappropriation, one could say Kelly and Cleveland on the one hand, those are clearly interference cases. Nobody would argue that Kelly and Cleveland were about misappropriation, right? In Cleveland, no one misappropriated the unissued video poker licenses. In Kelly, no one walked away with the lanes. The court was very firm about that. But here we have a clear misappropriation. Now we may also have, as the government has noted, we may also have some interference with the regulatory process. The government took great efforts to deem this information confidential, to hold it confidential. So in this case, you may have two things going on at once. You may have some interference with the regulatory process, and you may, but you also have misappropriation. And because you have misappropriation here as distinct from the Kelly and Cleveland line of cases, this falls- Misappropriation and property fraud have to have, it seems to me, the thing of value under 641 is no different from the property interest that exists under the property fraud statute. And if that's the case, then we're really talking about, I think you're making the point that, still making the point that this is property. That's right. And I think the value, just to pick up on your point, Judge Walker, I mean, if this case had only been an interference case, then it would have been just as Judge Sullivan said, that defendants would have been trying to hack into the CMS computer system to alter the rates themselves. So we know that's not this case, but when you focus on the misappropriation conduct, it aligns this case with Gerard. And I think that's the line to draw, and it permits this panel not to have to go so far as both the defendants and the government are arguing. They're both essentially arguing to significantly limit Carpenter, if not limit it to its facts. They're both really arguing to overrule Gerard because I don't think the government, as the government essentially conceded in its reply brief. And I think this panel need not go so far. But you don't seem to make a decision, a distinction between a regulatory nature of a case and the commercial aspect of keeping information secret that certainly existed in Carpenter. Well, I don't actually think, Your Honor, that that distinction is a workable one. I don't think that distinction, the sort of government as market participant versus government as property holder distinction, I don't think that's a distinction found in the case law. And I think it's a very difficult test to administer. You don't think it's a distinction that is drawn in Carpenter and Cleveland? I mean, in Kelly and Cleveland, that the government is a regulator and therefore it's different, qualitatively different from a private holder of confidential information? I don't think those two cases can be read to say that there's a difference between the government serving as a property holder and the government serving as a regulator. And I don't think Carpenter supports that distinction either. I think you have both parties in this case trying to draw lines. For the defense, the defendants want to impose this economic value test on the information, which I don't think is found in the case law. And I think you have the government trying to draw a line between government and its market participant capacity versus property holder capacity. And I think there are problems with both sets of lines. They're not supported in the case law and they actually both conflict with Girard. So Girard, as we know, is the government acting as regulator. There's nothing more regulatory than the government acting in its law enforcement capacity and safeguarding the confidential identities of its informants. And Girard says there's a property interest in that confidential information, but there's no sort of inherent economic value in that information. It's not the government acting in its market capacity. And so, to draw the distinction, I think, between the government serving in those two roles sort of necessarily would undercut Girard and it's not necessary in this case. Well, you're trying to preserve this case as opposed to Girard. And whether Girard survives, who knows at this point. That's an open question, it seems to me, at least in my mind. But that's not really too material to me because we're talking about whether, you know, we're talking really about three cases, Cleveland, Carpenter, and Kelly by the Supreme Court and trying to see whether if this case went to the Supreme Court under its current posture, the Supreme Court would, you know, what would they do in one sense? Because that, I'm looking at the legal landscape of those three cases. And that's what's troubling. I thought the panel's original position, relying so much on Carpenter, made a lot of sense to me at the time because I viewed Cleveland as more of an outlier, but now I don't view it as an outlier. I view Cleveland as the mainstay of Kelly and definitely the line of authority to reckon with here. Well, my argument is not so much designed to save Girard as to suggest that there's a line that can be drawn here. There's a workable test that can be applied that distinguishes this case effectively from Kelly and Cleveland. And that also has the benefit of preserving Girard. But I appreciate that that's not, you know, the case that's before the court. But I think fashioning a test that is consistent with the Supreme Court's landscape at this point and is also a workable test is ultimately, you know, an important factor to consider. And I would say, you know, both the government's proposed test and the defendant's proposed test are, you know, totally unworkable from the ground. And I think you could see Mr. Fagan struggling with Judge Sullivan's hypothetical because the test that the government is proposing that if the information is somehow a part and parcel of the regulatory process, then it loses its, for some reason, it loses its property-like qualities. It loses its property protection. I would have answered that hypothetical, I think, very cleanly in saying, yes, of course that's a misappropriation of government information. Prosecutors have several charging statutes to, you know, if all the elements are met at their disposal, well, one of them should be the property fraud statutes. And trying to assign an artificial distinction between when government, when information is also a part of the regulatory process, I think is a test that, you know, as I said, doesn't find support in the law, but also is totally unworkable. I think- When you're speaking about unworkability, what do you say to Mr. Verrilli's point that the government, basically what the government does is regulate. I mean, that's the function of the sovereign government to regulate. And that if you're going to say that this is, any information on the part that held by the government is property, that then you are really opening up the doors to property fraud, generally, as to all information that's possessed by the government. That's supposed to be confidential. Right. So I would say a couple of things to that, Judge Walker. First, you know, all of those policy arguments were raised before the original panel, you know, concerns about whistleblowers and the like. And the original panel considered them, you know, duly, fully brief, fully argued. I don't think Kelly really moves the needle at all on the policy considerations, but I also think it's relevant to say, you know, the way I think about this is Gerard has been the law of the land for, call it 40 years. Carpenter has been on the books for, call it 30. And we haven't seen an avalanche, you know, this, we haven't seen the same kind of issues that caused the McNally skilling decisions. We don't have this, it appears, this vast over-criminalization going on. I think the concerns raised are real, but in this context are a little bit of a red herring because the original panel's decision didn't make new law. It just applied Carpenter and Gerard to the facts before it. And I think there's a little bit of a straw man going on here, which is to say, if the convictions are affirmed, there's suddenly this sea change in the law and now the government can bring cases that it couldn't bring. I actually think the sea change goes the other way. I think that if the panel decides that Kelly, without mentioning Carpenter, limits Carpenter, cannot, says Carpenter really can't be applied to government information, that's the sea change. Okay. All right. Okay, thank you, Ms. Goldstein. We'll now hear from Mr. Morrelli for three minutes. Thank you. A point on harmless error and then on the property issue. My friend, Mr. Fagan, said that the substance conviction on the 641 count necessarily establishes the elements of the 371 client conspiracy. It does not. One key point is that to establish a client conspiracy count, you have to show specific intent, specific intent to interfere with or disrupt the functioning of the government. All that the jury had to find to convict on the conversion count was intent to interfere with the government's use and control of the property. That's what the jury instruction says, use and control of the property. That does not establish specific intent to disrupt the government's functioning. That depends on whether the confidentiality of the information in this circumstance does indeed have a significant impact on CMS's functioning. And that's exactly the thing that the parties fought about and over which there was contesting evidence. Evidence that CMS doesn't keep a strictly confidential, that consultants routinely speak with them, et cetera, evidence that there actually was no disruptive effect. And so I do think you can't get, you cannot get to harmless error through the section 641 conviction. In fact, the jury with respect to 641 was told that it should consider this information as property. It never had to think about how important the issue of confidentiality was. It was given instruction that this is property. And your only question is whether they have it without authorization and it interferes with the government's exclusive right to control the property. Doesn't get to the issue that you have to prove with respect to 641. And in terms of the Peltz opinion, I do think it's significant. The key sentence in Peltz that my friend, Mr. Fabian, relied on is conditional, has an if in it. It says an agreement whereby a federal employee will act to promote private benefit and breach of his duty thus comes within the statute if the proper functioning of the government is significantly affected thereby. So you have to prove it. They just want to assume it. You have to prove it. And it was hotly contested. It can't possibly be harmless error. With respect to Judge Sullivan's DEA hypo, with respect to the application of 371 in Girard, seems to me if that government employee received anything of value in exchange for leaking into his hedge fund buddies, then there are a number of crimes that were committed there. It seems to me pretty clearly bribery. It's pretty clearly honest services fraud as narrowed. And if you could meet the requirements for insider trading, probably again for insider trading too. So I don't think that there's a, you're not blowing a significant hole in the protections here. I think it's pretty clear that if you have a situation where anything of value is exchanged, then you're going to have multiple federal crimes. And then with respect to the behavior- What if nothing in value is involved? Well, if nothing in value is involved, a lot of those cases are going to be instruction of justice cases. I mean, Girard could easily have been charged as a witness tampering case because they were releasing information that could easily have been charged under 1512 C2, easily have been charged. That would clearly have met it. So I just don't think that there's a significant argument here in that regard. Now, with respect to the property issue, if I might, I do think that the Supreme Court has made clear that the fundamental distinction is whether the government is acting in its sovereign capacity as regulator or its capacity as a property. We don't think there's any argument here that the government is doing anything other than acting in its sovereign capacity as regulator. As my friend, Mr. Fagan said, and I've said, this is what we're fighting about is the content of a regulation. Can I give you a different hypothetical, Mr. Parley? So what if the antitrust division is being, deciding whether or not to support or oppose a merger and information about that decision is disclosed in advance of the department making that announcement. That's not going to be obstruction of justice, I don't think. Is that something that is purely regulatory and is also beyond the scope of the property statute? It will be a property crime. It could, you know, if there's an exchange of something of value that received by the leaker, it could be bribery, it could be honest services fraud, even under 1346 as narrowed under skilling. And maybe there'll be insider trading there as well, depending on facts and circumstances, but the mere disclosure in that circumstance, it doesn't deprive the government of any property. It's not a scheme to deprive the government of property. And I think the problem with trying to interpret these statutes to cover what are, I acknowledge are difficult hypotheticals that you're asking, Judge Sullivan, is that you can't confine it to there. If confidential information is property within these statutes or a thing of value within these statutes, then that means every disclosure of confidential, every unauthorized disclosure of confidential information by a federal official and under 1343 by a state and local official is a crime. And that can't possibly be right. The statute can't possibly have that reach. Just think the vast range of confidential information that reside within the federal government and that are in fact disclosed on a relatively regular basis can't possibly be what the statute means. And then in terms of, you haven't just made the point that, well, Carpenter's been on the books for a long time and there hasn't been this flood of negative consequences. I averted to my opening argument. Well, this case is groundbreaking. This is, there are a couple of other cases brought at the same time, but this is a new wave. This is a new effort by the federal government to extend, or this was before they now repudiated it, to extend these crimes to situations where they have not historically been employed. They have not historically been employed. The property forfeits have not historically been deployed to criminalize the unauthorized disclosure of regulatory information. These are brand new crimes. And that is why the expansion of the law that the government sought to achieve, but is now repudiating. Gerard is 40 years old. And you're saying now Gerard is no longer good law, right? That's correct, Your Honor. We don't think, because Gerard, as I said, I think Gerard could easily have been, the conduct in Gerard could easily have been charged as obstruction of justice. But the predicate of the court's holding in Gerard that could consider that information a thing of value was that it was property. I quoted that sentence from Gerard earlier. And it just isn't property, it isn't. And therefore, and the Supreme Court has just made that clear it's regulatory information, government's acting in its regulatory capacity, it's not property. And therefore, whatever other crimes- But it doesn't say acting in its regulatory capacity. It says where the scheme is designed to alter a regulatory choice, right? Isn't there a difference between that and what is alleged here? Well, yes, there's a difference, Your Honor. But I guess I take issue with that description of what Kelly was all about. Kelly described, the court described the particular facts as being about a scheme to alter regulatory choice. But the driving principle, and it's a principle of statutory interpretation, the court is interpreting the words of statute in Kelly as it did in Carper. And it said, interpreting the words of the statute, the defining criterion is whether the government is acting in its sovereign capacity or in its capacity as property owner. And that does, of course, get to the other aspect of Kelly where the government said, where the court said that the government's investment of time and resources that taking the government's investment of time and resources doesn't qualify as property interest unless taking those time and resources was the object of the scheme. And the court gave the example of the parks commissioner directing her employees to go do landscaping for a political contributor. But here, of course, that was another portion of the panel majority's ruling previously that there was an economic interest, namely the time and energy of government employees invested in creating this information. I think Kelly rejects that as well. And so, if I just sum up here, we appreciate the thorough analysis of the issues in this case, it was the court. The court had every right to do. But I will say it is a matter of great significance that the United States has decided that these convictions cannot stand. The United States makes a decision like that, the principle that it applies is not just that they think that the position is wrong, but that there is no reasonable argument that can be made in defense of the position. That is a decision that the United States does not make lightly. It's an extremely weighty decision. I'm sure it was an extremely considered decision. While it does not bind this court, I think it deserves a very great deal of deference on this court. But if there are no further questions, I'm prepared to submit. Thank you. All right, hearing no further questions, we will then wrap up for today. Let me thank each of the oralists. Let me thank Ms. Goldstein for coming in as a court appointed amicus. Let me thank our tech people and Mr. White, our courtroom deputy. We had a very smooth argument, which is a tribute to the hard work of a lot of people who have really labored to make sure that this is the next best thing to being in person. So I'm very grateful to them as well. So with that, we'll reserve decision.